UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RODNEY CLAY                          CIVIL ACTION NO. 6:16-cv-00108

VERSUS                               JUDGE JAMES T. TRIMBLE

U.S. COMMISSIONER,                   MAGISTRATE JUDGE WHITEHURST
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that this case be remanded for further proceedings consistent with this opinion under the fourth sentence of 42 U.S.C. § 405(g).

## I. ADMINISTRATIVE PROCEEDINGS

The claimant, Rodney Renell Clay, fully exhausted his administrative remedies prior to filing this action in federal court. The claimant filed an application for disability insurance benefits ("DIB") and an application for supplemental security income benefits ("SSI"), alleging disability beginning on April 19, 2013.[1] His applications were denied.[2] The claimant requested a hearing, which was held on

---

[1]    Rec. Doc. 8-1 at Tr. 124, 131, 169, 173.

[2]    Id. at 25-34.

November 3, 2014, before Administrative Law Judge Carol Lynn Latham.[3] The ALJ issued a decision on November 24, 2014,[4] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from April 19, 2013, through the date of the decision. The claimant asked for review of the decision, but the Appeals Council concluded on February 28, 2014, that no basis existed for review of the ALJ's decision.[5] Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## II. SUMMARY OF PERTINENT FACTS

The claimant was born on February 20, 1960.[6] At the time of the ALJ's decision, he was 54 years old and had a limited education.[7] He had past relevant work experience as as a sandblaster painter, spray painter and galley hand.[8] He

_____

[3]     Id.; Transcript of the hearing at Id., Exh. 1B, pp. 48-65.

[4]     Id. at 34.

[5]     Id. at 84-88.

[6]     Id. at 32.

[7]     Id.

[8]     Rec. Doc. 9 at 3.

alleges that he had been disabled since April 19, 2013, due to back injury, joint pain, knee pain, diabetes, high blood pressure, and high cholesterol.[9]

As to his daily activities, the claimant testified that he lives with his sister. He does not drive a vehicle. He gets up in the morning and tries to walk around. He takes his prescribed medication without reminder. His sister performs the household chores and grocery shopping. He accompanies his daughter to leave the house and run errands.

In May 2007, the claimant suffered a fall while working offshore and sustained injury to his lower back, hip, left leg, and left knee. *R. 8-1, Tr. 26; 1F, pp. 1-22.* He was diagnosed by Dr. John Cobb with a herniated disc at L3-L4 on the left side and tear of the medial meniscus of the right knee. *R. 8-1, 1F, pp. 1-22.* Dr. Cobb prescribed pain medication and recommended surgery on the L3-L4 disc and on the right knee. *Id.* The claimant did not have the back surgery but he did have surgery on the right knee. *R. 8-1, Tr. 30.* He filed a worker's compensation claim for benefits arising out of his on-the-job injury in 2007, and settled in September 2007, for $27,500. *Id.* Claimant subsequently returned to work until April 2013. *Id.* He received unemployment benefits in the second and third quarters of 2013. *Id.*

---

[9]     Id. at 30.

The claimant's medical records from University Hospital in Lafayette in 2009, confirm he was assessed with a medial meniscus tear and that he underwent a right knee meniscus repair surgery. On April 21, 2013, the claimant presented at University Hospital at which time a history was given of low back pain radiating into the left hip. *Id., 2F, pp. 1-13, Tr. 259*. No abnormalities were noted and the claimant was prescribed medication for pain. *Id. at 262*. On May 1, 2014, the claimant was seen at University Hospital with complaints of back, hip and knee pain. *Id., Tr. 301-303*. His examination indicates he had full strength in the lower extremities. *Id.* He returned to University Hospital on July 12, 2013, with complaints of back and knee pain. *Id., Tr. 256*. On September 9, 2014, the claimant reported to University Hospital for follow-up of his low back pain. *Id., Tr. 295*. His record indicates he was taking flexeril and tramadol for pain on a maintenance basis. *Id., Tr. 297*. The claimant reported his back pain as "resolved." *Id., Tr. 295, 7F, p. 3*.

Dr. Mark Fujita conducted a consultative examination of claimant in February 2014. *Id., 4F, pp. 3-6, Tr. 27*. The claimant complained of low back pain radiating in his left lower extremity. *Id.* He reported left knee pain, weakness, and difficulty with standing for prolonged periods. *Id.* At that time he reported the ability to lift and

carry 50 pounds.[10] Dr. Fujita's notes reflect that the claimant had no difficulty getting on and off the exam table or up and out of the chair. *Id.* Lumbosacral x-rays showed mild findings of degenerative disc disease. *Id.* The claimant had a mildly decreased range of motion in the lumbar spine at 70 degrees of lumbar flexion, otherwise full range of motion. *Id.* He had decreased left knee range of motion with left knee flexion. *Id., 4F, p.5.* Both knees had 5/5 strength in both flexion and extension. *Id.* He was able to perform all maneuvers. *Id.* Diagnostic assessment included back injury, knee pain, high blood pressure, diabetes, and high cholesterol. *Id.*

In December 2013, the claimant was seen by Dr. Ong, at which time he reported muscle pain. *R. 8-1, 5F, pp. 1-16.* In a March 2014 visit to Dr. Ong, he reported knee pain and hip pain. *Id.* Dr. Ong found that the claimant had been unable to work since July 2013, due to back and knee pain. *Id.* In April 30, 2014 and August 2, 2014 visits to Dr. Ong, the claimant reported back pain, knee pain, and left hip pain. *Id., Tr. 272, 285-286.* Dr. Ong treated the claimant conservatively for his back pain with prescriptions for pain medication and a muscle relaxant. *Id.*

The claimant was seen by emergency room physicians at Chabert Hospital in Houma on August 1, 2014, with complaints of left low back pain radiating

---

[10] The ALJ noted that at the November 2014 hearing, 9 months later, he testified he could lift or carry no more than 10 to 15 pounds. 4F.

downward. *R. 8-1, Tr. 28, 288-292, 6F, pp. 1-6.* He was observed as ambulatory. *Id.* His musculoskeletal examination noted normal range of motion. *Id., 6F at p.4.*

In February 2014, Dr. John Pataki, M.D., the state agency medical consultant, completed a disability determination form on the claimant's residual functional capacity. *R. 8-1, Tr. 8, 1A.* Dr. Pataki found dysfunction of the claimant's left knee (major joint) and degenerative disc disease of the lumbar spine to be severe. *Id.,1A, p. 3.* He opined that the claimant could perform less than the full range of light work activities. *Id.* The claimant could frequently climb ramps and stairs, frequently climb ladders, ropes, and scaffolds, and occasionally kneel, crouch and crawl. *Id.*

### III. ANALYSIS

#### A. STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[11] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Substantial

---

[11]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[12]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[13]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[14]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[15]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[16]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3)

---

[13]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[14]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[15]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[16]     *Martinez v. Chater*, 64 F.3d at 174.

the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[17]

## B.   <u>Entitlement to Benefits</u>

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[18]  Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[19]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but

---

[17]   *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[18]   See 42 U.S.C. § 423(a).

[19]   42 U.S.C. § 1382(a)(1) & (2).

[20]   42 U.S.C. § 1382c(a)(3)(A).

cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[21]

## C.    <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process required the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[22]  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[23]

---

[21]    42 U.S.C. § 1382c(a)(3)(B).

[22]    20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[23]    *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[24] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[25] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[26]

The claimant bears the burden of proof on the first four steps.[27] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[28] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[29] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[24]     20 C.F.R. § 404.1520(a)(4).

[25]     20 C.F.R. § 404.1545(a)(1).

[26]     20 C.F.R. § 404.1520(e).

[27]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[28]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[29]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

rebut this finding.[30]  If the Commissioner determines that the claimant is disabled or

not disabled at any step, the analysis ends.[31]

**D.    THE ALJ'S FINDINGS AND CONCLUSIONS**

In this case, the ALJ determined, at step one, that the claimant has not engaged

in substantial gainful activity since April 19, 2013.[32]  This finding is supported by the

evidence in the record.

At step two, the ALJ found that the claimant has the following severe

impairments: history of right knee meniscus tear and lumbar disc herniation.[33]  This

finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.[34]

---

[30]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[31]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[32]      Rec. Doc. 8-1 at 27.

[33]      Id.

[34]      Id. a 29.

The ALJ found that the claimant has the residual functional capacity to perform work at the light level except that the claimant can frequently climb ramps and stairs, occasionally climb ladders, ropes and scaffolds, and occasionally kneel, crouch and crawl.[35]

At step four, the ALJ found that the claimant is not capable of performing his past relevant work.[36]

At step five, the ALJ found that the claimant was not disabled from April 19, 2013 through November 24, 2014, because there are jobs in the national economy that he can perform.[37] The claimant challenges this finding.

E. **THE ALLEGATIONS OF ERROR**

The claimants alleges that the ALJ erred (1) in making a negative credibility assessment of the claimant's complaints, considering his work history and longitudinal history of physical difficulties; and (2) in applying age related rules to the claimant when doing otherwise would have resulted in a favorable decision. The claimant further alleges that the Appeals Council erred in failing to consider, as new

---

[35]     Id.

[36]     Id. at 32.

[37]     Id. at 33.

and material evidence the claimant's submission of x-rays, taken on May 19, 2015 and August 27, 2015. Tr. 9, 11.

## F. <u>DID THE ALJ ERR IN EVALUATING THE SUBJECTIVE ALLEGATIONS</u>

Based on the record related to the claimant's subjective complaints, discussed by the Court in the foregoing, the Court finds that the ALJ properly considered the entirety of the evidence in the record in assessing Plaintiff's subjective complaints. In particular, the ALJ considered the claimant's testimony, the reports of his treating physicians of his back, knee and hip pain from 2013 through 2014, and the treatments he received, his report of performing limited daily activities and the medical consultant reports in find that he retained the capacity to perform light work. *Tr. 25-28*.

In his objection, the claimant fails to discuss the record and instead poses the question of why, based on his steady work history, he would choose to receive disability benefits over continuing to work. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain or other symptoms, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*,

269 F.3d 520, 522 (5th Cir. 2001). The ALJ in this case explained why she found the claimant's subjective complaints were not fully supported, and discussed the evidence she considered. *Tr. 25-28*. Accordingly, the ALJ's evaluation comports with the legal requirements for evaluating symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *4.

## G.   <u>DID THE ALJ PROPERLY CONSIDER CLAIMANT'S AGE</u>

The Regulations utilized by the Commissioner provide that a claimant's chronological age is to be considered in combination with his residual functional capacity, education, and work experience in determining whether he is disabled and is thus entitled to Social Security benefits. 20 C.F.R. § 404.1563(a). The Regulations break down age into the following categories: 1) a "younger person" (under age 50); 2) a "person closely approaching advanced age" (age 50 to 54); and, 3) a "person of advanced age" (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). Those well-defined groupings notwithstanding, the Regulations provide that the enumerated age categories will not be applied mechanically in a so-called "borderline situation" but will instead be used as follows:

> [i]f you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider

whether to use that older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b).

Because the term "borderline" is not specifically defined, the Fifth Circuit has observed that the Commissioner is vested with considerable discretion in determining whether such a situation is present. *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir.1988). Courts construing § 404.1563(b) have similarly grappled with the Regulation's temporality element. As a general rule, a person who is within six (6) months of the next higher age category is considered to be in a borderline situation. *Ware v. Colvin*, 2014 WL 4999276, at *9 (W.D.Tex.,2014); *Manning v. Colvin*, 2014 WL 266417, at *6 (N.D.Tex.,2014); *Horsley v. Colvin*, 2014 WL 1213467, at *4 (N.D.Miss.,2014); *Stout v. Astrue*, 2012 WL 1020179, at *11 (E.D. La. Feb. 22, 2012), *Florent v. Astrue*, 2010 WL 2977617 at *11 n. 5 (E.D.La. Jun. 17, 2010).

While there is no per se requirement that an ALJ explain in her written decision why she did not use an older age category, § 404.1563(b) specifically mandates that the issue be "considered" such that the record contains enough of an explanation of the ALJ's overall disability adjudication to enable reviewing courts to determine whether the decision is supported by substantial evidence. *Bowie v. Comm. of Soc. Sec.*, 539 F.3d 395, 400–401 (5th Cir.2008). Although this can be accomplished by

a specific pronouncement by the ALJ or even the AC that the borderline age issue has been considered, *Stout,* 2012 WL 1020179, at *10, the ALJ's reliance on the testimony of a VE in assessing the overall impact of all of the factors of a claimant's case will typically suffice. *Bowie*, 539 F.3d at 396.

Here, the claimant argues that because he was in a borderline age situation, the ALJ should not have mechanically applied the age categories. *See Doc. 9 at 6-7.* At the time of the ALJ's decision, the claimant was within three (3) months of his 55th birthday—sufficiently close to potentially present a borderline age situation according to Section 404.1563(b). The operative date for the claimant in this case is December 31, 2015, the date that he was last insured for DIB. That is because in determining a claimant's age for the purposes of a disability determination, the ALJ must consider either the date last insured, if that date occurs before the date of the decision, or the claimant's age as of the date of the decision, if the date of decision occurs before the last date insured. Here, the last date insured, December 31, 2015, occurred *after* the date of the ALJ's decision, November 24, 2014, so the claimant's age is considered as of the date of the ALJ's decision. *Manning*, 2014 WL 266417, at *5. At that time, the claimant was less than three (3) months shy of being fifty-five years old which would have bumped him from the "closely approaching advanced age" to the "advanced age" category.

The ALJ's decision does not mention the claimant's age as of the date of the decision (or his age as of the date of the hearing); it only refers to his age as of the date of his alleged onset date, two years earlier when the claimant was 53 years old. The failure to reference claimant's actual age suggests that the ALJ did not consider the claimant's current age as of the date of the hearing or the date of the decision. Thus, there is no sufficient basis for the Court to conclude that the ALJ in fact recognized that the claimant was 54 years old and within three months of being of "advanced age." Although a vocational expert was called to testify at the administrative hearing, the ALJ specifically limited his testimony to the claimant's past work experience and the exertional limitations.[38] He was not asked to opine on whether the plaintiff could work given his specific age or education. While the ALJ stated that the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpart P, Appendix 2,[39] "supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills," there is no discussion of the claimant's additional vocational adversities or that she applied the grid rules to the claimant's situation.

---

[38] [ALJ to Mr. Mongo] "And have you read the file regarding the claimant's work history?" .... "Assume a hypothetical individual with the past jobs that you described. Further assume that this individual is limited to the light exertional level ...."

[39] *See* Application of the Medical–Vocational Guidelines in Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, Hearings, Appeals and Litigation Law Manual (HALLEX) II–5–3–2.

Had she considered the claimant's actual age and ultimately decided that application of the older age category was more appropriate, Rule 202.01 appears to direct a finding of disability.[40] *See* 20 C.F.R. 404, Subpt. P., App. 2, Rule 202.01.

From a review of her written decision, the ALJ failed to articulate a non-mechanical conclusion about which age category was appropriate for the claimant and failed to state whether she considered the borderline-age issue at all. *See Anderson v. Astrue*, 2011 WL 2416265 at *14 (N.D. Ill. June 13, 2011). The ALJ's lack of reference to the claimant's age, in combination with the ALJ's lack of explanation when classifying the claimant, render the record insufficient to demonstrate that the ALJ recognized or considered the claimant's borderline age situation as required by the regulations. Thus, there is not sufficient evidence in the record to support the ALJ's ultimate decision in this regard, and the undersigned finds a remand is proper on this issue. *See Jackson v. Colvin,* 2017 WL 874835, at *6 (E.D.Tex., 2017); *Stout v. Astrue*, 2012 WL 1020179, at *11 (E.D.La.,2012); *Bowie v. Commissioner of Social Sec.*, 539 F.3d 395, 400–401 (6th Cir. 2008) ("Although an ALJ does not have a procedural obligation to address a claimant's borderline age situation in his opinion or explain his reasons for arriving at a particular age

_____

[40] While not binding on this court, the procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals set forth in the HALLEX, section II–5–3–2, directs ALJs to consider whether the claimant has presented "additional vocational adversities" in determining whether to veer from a claimant's chronological age in a borderline situation. HALLEX II–5–3–2.

categorization, lack of an explanation may in some cases mean that the ALJ's ultimate decision is not supported by sufficient evidence."

## H.   CONSIDERATION OF ADDITIONAL EVIDENCE

Following the ALJ's ruling, the claimant requested review by the Appeals Council and, in an October 13, 2015 letter, his attorney submitted additional evidence including two x-rays reports from May 2015 and August 2015, showing abnormal findings in his left hip. *R. 8-1, Tr. 8-11*. The claimant argues that the new evidence was related to the claimant's "well documented history of left hip complaints throughout the period adjudicated." *R. 9, p. 8*. The Appeals Council responded that "[t]his new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 24, 2014." *R. 8-1, Tr. 2*.

"In deciding whether to deny the claimant's request for review, the AC [Appeals Council] must consider and evaluate any 'new and material evidence' that is submitted, if it relates to the period on or before the ALJ's decision." *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). "For new evidence to be material, there must exist the "reasonable possibility that it would have changed the outcome of the Secretary's determination." *Hamilton-Provost v. Colvin*, 605 Fed.

Appx. 233, 238 (5th Cir. 2015) (citing *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 2015)).

When a claimant has submitted additional evidence to the Appeals Council and the Appeals Council denies review, the reviewing court must decide whether the ALJ's decision is supported by substantial evidence in light of the record as a whole, including the additional evidence that is now part of the record on appeal. *See Sun v. Colvin*, 793 at 511-512; *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-282 (5th Cir. 2006). Remand is appropriate only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported. *Petticrew v. Colvin,* 2014 WL 2880019, at *10 (S.D. Tex. 2014) (citing *Higginbotham*, 163 F. App'x at 281-282).

Plaintiff submitted x-ray reports of two views of his left hip taken on August 27, 2015, as proof of his disability. These reports indicate "marked osteoarthritic changes" in the claimant's left hip. The ALJ considered objective evidence related to the claimant's claim of disability from April 19, 2013 through November 24, 2014, however, which failed to corroborate his claim of having significant hip limitations for the period at issue. Among those findings, in April, July and November 2013, the claimant's physical examinations did not indicate any hip abnormalities and showed normal musculoskeletal and neurological functions were intact. *R. 8-1, Tr. 258, 325.*

The claimant's medical records from 2014, further support the ALJ's finding on the basis of the claimant's lower back pain. In examinations conducted in February, May and August 2014, the claimant had full range of motion, full (5/5) strength and intact neurological functioning. *Id., Tr. 320, 302, 290.* More specifically, at a consultative examination in February 2014, Dr. Fujita found the claimant had a mild decrease in range of motion of his left hip—80 degrees out of 100 degrees; had full strength of his lower extremities; exhibited a normal gait; did not require an assistive device to ambulate; could walk on his heels and toes; could walk heel-to-toe; could squat without difficulty; denied severe pain during the examination; and, could perform all maneuvers without difficulty. *Id., Tr. 269.* Finally, a treatment note from a follow-up examination indicates that the claimant's hip pain, as well as other past medical problems, were "resolved." *Id., Tr. 295.*

The evidence submitted to the Appeals Council does not undermine the ALJ's disability determination and does not provide any substantial evidence that the Appeals Council erred by rejecting the evidence as a basis to reverse the ALJ's decision. To the extent that the claimant may have developed any increased symptoms or newly diagnosed condition that developed after November 24, 2014, the new medical records demonstrate, at best, a deterioration of a previously non-disabling condition. "Remand [cannot] be based on new evidence of a subsequent deterioration

of what was previously correctly held to be a non-disability condition." *Lenoir v. Apfel*, 234 F.3d 29 (5th Cir. Sept. 14, 2000); *accord McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir.2006). If the claimant has evidence that his condition deteriorated to the point that he became disabled after November 24, 2014, he can use the evidence to apply directly to the Social Security Administration for benefits for the appropriate period. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir.2001)).

## IV. Conclusion and Recommendation

For the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the Court REVERSE the decision of the Commissioner and REMAND this case for further proceedings consistent with this opinion under the fourth sentence of 42 U.S.C. § 405(g).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 11th day of September 2017.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**